**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2166
_____

UNITED STATES OF AMERICA

v.

LUIS FERNANDEZ RUIZ-HERRERA,
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 10-CR-06-00537-3)
District Judge: Honorable Paul S. Diamond
_____

Submitted Under Third Circuit L.A.R. 34.1(a)

October 1, 2012

Before: FUENTES, FISHER and GREENBERG, *Circuit Judges*

(Opinion Filed: November 6, 2012)
_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*:

Luis Fernandez Ruiz-Herrera ("Ruiz-Herrera" or "Appellant") appeals his

sentence of 360 months for conspiracy to distribute five kilograms or more of cocaine

and for possession with intent to distribute a controlled substance in violation of 21

U.S.C. § 846, and 21 U.S.C. § 841(a)(1), (b)(1)(A), respectively. He argues that the United States District Court for the Eastern District of Pennsylvania violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), by classifying him as a "manager " of a criminal conspiracy pursuant to U.S.S.G. § 3B1.1(b), which subjected him to a three-level enhancement and made him ineligible for a two-level downward departure under the safety valve provision of the sentencing guidelines. We disagree, and thus affirm.

## I.      Factual and Procedural Background

As we write solely for the parties, we recite only those facts necessary to our decision. Ruiz-Herrera participated in two separate attempts to deliver cocaine, one from Laredo, Texas to Philadelphia, Pennsylvania, and another from California to Detroit, Michigan. The first incident began in May 2005 when a confidential informant ("Informant") met with Ruiz-Herrera, Paul King's ("King") co-defendant, to set up a delivery of cocaine to King in Philadelphia. Subsequently, Ruiz-Herrera provided the Informant with the number for a contact in Laredo, Texas ("Contact") and directed him to speak with the contact about transporting a load of cocaine from Texas to Philadelphia. Ruiz-Herrera also provided the Informant with instructions for the delivery of the cocaine.

With the information provided by Ruiz-Herrera, the Informant called the Contact and arranged for pick-up of the shipment destined for Philadelphia. Thereafter, on June 28, 2005, the Informant delivered approximately 90 kilograms of cocaine to a lot owned by King in Philadelphia. Subsequently, King arrived at the lot and oversaw the removal

2

of the cocaine from pipes in the Informant's tractor-trailer to a white van. The DEA executed a search warrant for the van and found 89.93 kilograms of cocaine.

In the second incident, Ruiz-Herrera conspired with the Informant to deliver cocaine from California to Detroit, Michigan. Ruiz-Herrera, driving a black Saturn, escorted the Informant, who drove his tractor-trailer, to a location under an over-pass in Wilmington, California. There, Ruiz-Herrera directed the loading of cocaine into the Informant's tractor-trailer and instructed the Informant to proceed to Detroit. Authorities later stopped the tractor-trailer and seized 64 kilograms of cocaine.

Following a jury trial, Ruiz-Herrera was found guilty on one count of conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846 and one count of possession with the intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). The statutory sentencing range for these violations is ten years to life imprisonment. The base offense level is 38, which, combined with Ruiz-Herrera's criminal history category of I, results in a sentencing guidelines range of 235-293 months. At the sentencing hearing, and over Ruiz-Herrera's objection, the District Court found that Ruiz-Herrera was a "manager" of the criminal conspiracy, increasing his base offense level to 41, which resulted in a sentencing guidelines range of 324-405 months. After considering all relevant factors set forth in 18 U.S.C. § 3553(a), the District Court sentenced Ruiz-Herrera to 360 months imprisonment. Ruiz-Herrera appealed.[1]

_____

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's factual determination for

3

## II.      Discussion

Appellant argues that, under *Apprendi*, the determination as to whether he was a "manager" for sentencing purposes should have been made by a jury and not the sentencing court.

In *Apprendi*, the defendant pled guilty to second-degree possession of a firearm for unlawful purposes, which carried a prison term of five to ten years.  But the trial court found that Apprendi's conduct violated New Jersey's "hate crime" law because it was racially motivated, and, accordingly, imposed a 12-year sentence, two years more than the maximum allowed under the firearm statute.  The Supreme Court reasoned that this violated Apprendi's right to a jury trial, and held that, "[o]ther than the fact of prior conviction, any fact that increases the penalty for a crime beyond that prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.

In *United States v. Booker*, 543 U.S. 220, 245-68 (2005), the Supreme Court applied *Apprendi's* holding to the federal sentencing guidelines and held that the sentencing guidelines are advisory, not mandatory, and that courts are to consider them and other factors in 10 U.S.C. § 3553(a) in selecting an appropriate sentence.  *Id*.  In *United States v. Grier*, 475 F.3d 556, 565 (3d Cir. 2007), this Court made it clear that, after *Booke*, a sentencing judge may make factual findings pertinent to considering the

---

clear error and *de novo* application of the law to the facts.  *United States v. Lafferty*, 503 F.3d 293, 298 (3d Cir. 2007).

4

advisory guidelines, and must make such findings under a preponderance of the evidence standard.

In this case, the statutory maximum for the violations is life imprisonment. Under *Grier*, the District Court made a factual finding concerning Ruiz-Herrera's role as a "manager," which did result in a higher guideline range. Nevertheless, the court imposed a sentence of 360 months imprisonment, a sentence within the statutory maximum of life imprisonment. Moreover, there is nothing to indicate that the District Court viewed the guidelines as anything other than advisory and the record reflects that the District Court's finding of Ruiz-Herrera as "manager" is supported by a preponderance of the evidence. Consequently, the District Court did not violate *Apprendi*.

Because the District Court did not violate *Apprendi* in determining that Ruiz-Herrera was a "manager," the court's application of the three-level enhancement under U.S.S.G § 3B1.1(b), and its denial of the safety valve provision of the U.S.S.G. § 5C1.2 was not erroneous.[2] Finally, we are satisfied that the District Court properly considered the appropriate factors set forth in 18 U.S.C. § 3553(a).

## III. Conclusion

We conclude that the District Court did not violate *Apprendi* in finding Ruiz-Herrera to be a "manager" under an advisory guideline range. Accordingly, we will affirm the District Court's sentence.

---

[2] The safety valve provision states that in the case of an offense under 21 U.S.C. §§ 841, 846, the court shall impose a sentence in accordance with applicable guidelines below the statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5). Based on 18 U.S.C. § 3553(f)(4), a defendant is ineligible for the safety valve provision if the defendant is a "manager" or "supervisor" in the offense.